UNITED STATES DISTRICT COURT      SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Maria Miramontes, | § | United States District Court<br>Southern District of Texas<br>**ENTERED**<br>March 21, 2022<br>Nathan Ochsner, Clerk |
| Plaintiff, | § | |
| | § | |
| *versus* | § | Civil Action H-21-927 |
| | § | |
| The City of Arcola, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## Opinion on Partial Dismissal

1.   *Background.*

   Maria Miramontes worked at a restaurant that City of Arcola Police Department officers would frequent. She says that officer Hector Ruiz and his supervisor would make unwanted sexual comments toward her – all encouraged by the supervisor.

   On August 11, 2019, Miramontes and her son were riding in her boyfriend's car when an officer stopped the car for suspicion of driving while intoxicated. Ruiz arrived at the scene. Miramontes says that he told her that she had to ride with him or else he would arrest her, put her son in Child Protective Service's custody, and deport her. When she got in the car, he took her phone and purse and drove them to her house.

   Upon arriving at her home, Miramontes says that Ruiz walked her inside, took her to the bedroom, and sexually assaulted her – while repeating the same threats.

   On March 22, 2021, Miramontes sued the City of Arcola for: (a) municipal liability under 42 U.S.C. § 1983; and (b) assault, battery, and false imprisonment under the Texas Tort Claims Act. The City has moved to dismiss for failing to state a claim. It will prevail in part.

2.    *State Law Claims.*

Miramontes has sued the City for assault, battery, and false imprisonment under state law. She conceded that the Texas Tort Claims Act's election of remedies provision[1] applies, so the state law claims – encompassing acts by Ruiz – are solely brought against the City. The remaining analysis, then, continues with the City as the sole defendant against these claims.

The City is liable for the negligence of its employees caused by the use of motor vehicles and tangible or real property.[2] Excluded from this waiver of immunity, however, are all claims "arising out of assault, battery, false imprisonment, or any other intentional tort."[3]

Miramontes seems to try and rely on *Meadows v. Ermel,* 483 F.3d 417 (5th Cir. 2007), which interpreted section 101.057 in a way that allowed an intentional tort claim to survive dismissal. The Court of Appeals later faulted this argument when it found the logic contradicted the Texas Supreme Court's interpretation of the statute.[4] *Meadows* now rests as unpersuasive.

Because the City is immune from intentional torts, Miramontes's assault, battery, and false imprisonment claims will be dismissed.

3.    *Section 1983.*

To state a municipal liability claim under section 1983, Miramontes must have adequately pleaded facts that: (a) a constitutional violation occurred; (b) a

---

[1] Texas Civ. Prac. & Rem. Code § 101.106(a).

[2] *Id.* § 101.021; *City of Watauga v. Gordon,* 434 S.W.3d 586, 589 (Tex. 2014).

[3] *Id.* § 101.057(2); *Pena v. City of Rio Grande City,* 879 F.3d 613, 625 (5th Cir. 2018); *Mission Consol. Indep. Sch. Dist. v. Garcia,* 253 S.W.3d 653, 658 (Tex. 2008).

[4] *Bustos v. Martini Club, Inc.,* 599 F.3d 458, 463 (5th Cir. 2010).

policy attributable to the City's policymaker; and (c) the policy was the moving force behind the violation.[5]

When a city has a facially valid policy but does not train its officers to follow it in a way that does not violate constitutional rights, that failure is considered a policy if the city was deliberately indifferent to those rights.[6] To state a failure to train claim, Miramontes must have pleaded facts that: (a) the City's training was inadequate; (b) it was deliberately indifferent with its training policy; and (c) the inadequacy directly caused the violation.[7]

Deliberate indifference generally requires a pattern of similar incidents where citizens were injured.[8] An extremely narrow "single-incident exception" exists if the specific injury was the highly probable consequence of the lack of training.[9] This exception is "generally reserved for those cases in which the government actor was provided no training whatsoever."[10] The failure must concern a "clear constitutional duty implicated in recurrent situations that a particular employee is certain to face."[11] Miramontes must "allege with specificity how the training is defective" and cannot "style [her] complaints about the specific injury suffered."[12]

---

[5] *Littell v. Houston Indep. Sch. Dist.*, 894 F.3d 616, 622-23 (5th Cir. 2018).

[6] *City of Canton v. Harris*, 489 U.S. 378, 389 (1989).

[7] *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010).

[8] *Snyder v. Trepagnier*, 142 F.3d 791, 798-99 (5th Cir. 1998).

[9] *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010).

[10] *Pena*, 879 F.3d at 624.

[11] *Littell*, 894 F.3d at 624-25.

[12] *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005).

To state a failure to supervise claim, Miramontes must have pleaded facts that: (a) the City systematically did not supervise its officers; (b) that is causally connected to her deprivation; and (c) the City was deliberately indifferent.[13]

The City must have some form of advanced knowledge – actual or constructive – that the violation would most likely result from the policy.[14] To be the moving force, the City's policy must be affirmatively linked to the violation and more than the but-for cause.[15]

Miramontes clearly has a right under the Fourth Amendment to have her bodily integrity protected and to be free from unreasonable seizures. If all of the facts in the complaint are taken as true, then her constitutional rights were violated.

Miramontes says that the City – through its policymaker, Police Chief Ellison – has three policies:

(a)     "police officers are allowed to deceive – to cajole, lie, and threaten – in order to obtain information and to procure action from detainees;"

(b)     the Watchguard system covering police vehicle cameras, but the only policy the City had was from 2001 and only covered manual video tapes. Miramontes argues that this constitutes the City having no policy on the system, or the lack of a policy being the policy; and

(c)     at the time, the City had no policy covering the use of body worn cameras, or another instance of a lack of a policy being the policy.

---

[13] *Estate of Davis v. North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).

[14] *Burge v. St. Tammy Parish*, 336 F.3d 363, 370 (5th Cir. 2003).

[15] *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992).

She also claims that the City has:

(a)   "failed to properly train, hire, control, discipline, and supervise employees;"

(b)   "failed to establish and maintain a proper policy for dealing with the safety of female detainees;"

(c)   "failed to provide protection from sexual predators for female detainees;"

(d)   failed "to assess ongoing sexual harassment and assaults upon female detainees;" and

(e)   poorly recorded and transmitted evidence of sexual assaults to other agencies.

Miramontes says that, because the City did not have policies, it could not have trained and supervised its officers properly on their policies – making its training deficient. She also highlights a 2019 email discussing misuse of Watchguard and infers that misuse hints at improper training. She argues that the City should have given more training in these areas. Miramontes also insists that the City did not properly supervise its officers because Ruiz's "supervisor encouraged [him] to make advances to and sexual harassment of [Miramontes] while on duty."

Miramontes argues that the City was deliberately indifferent under both standards. For a pattern, she points to: (a) a 2019 email complaining of City officers "flirting" on duty and "other complaints of malfeasance;" (b) another officer's indictment for theft while in uniform; (c) an internal email that "indicates that police officers are routinely misusing the Watchguard system and not properly utilizing it at all times;" (d) Ruiz's "similar, wholly improper conduct with at least one other female victim;" (e) the City's "history of allowing its officers to harass women while the officers are on duty and at extra

employments;" and (f) Ruiz's supervisor encouraging him to make unwelcome sexual advances.

Miramontes also argues that the single-incident exception applies. She says that her detention and sexual assault were the highly probable consequence of the City's failure to have and train on the policies – one policy the City may have been legally required to have enacted.

Miramontes says that the policies and failure to train were the moving force behind her violations. She argues that had the City not had a policy of allowing its officers to lie, Ruiz would not have felt empowered to threaten Miramontes to get her in his car and ultimately to her home to assault her. She also insists that if the City had a proper policy and properly trained its officers on how to use Watchguard and body cameras, Ruiz would not have been in the situation to assault her because the conduct would have been monitored.

The City counters her pattern claim. It raised the distinctions between: flirting in a restaurant and sexual assault; Ruiz's other assault happening after hers – so how could the City have been aware of a pattern; and the other officer being indicted for theft is a different class of crime from assault. The City argues that none properly allege that the City should have known that Ruiz would assault Miramontes. The City also insists that this case does not meet the narrow single-incident exception.

The City says that Miramontes's failure to supervise claim was predominately pleaded with legal conclusions. It finally argues that its policies were not the moving force behind her violations – but the independent criminal conduct of a former employee.

The court is inclined to agree with the City's argument concerning the pattern of similar incidents. Miramontes identifies four incidents to suggest a pattern – one that is potentially related, one that is after-the-fact, and one that is too generally related to be legally similar. This is insufficient to be a pattern.

Concerning the single-incident exception, when treating the facts pleaded as true and making reasonable inferences in Miramontes's favor, she has adequately pleaded the exception. The court understands the notion that police officers should not have to be trained to not violate criminal laws -- but it is also not blind to the fact that it can happen, and that, at times, there is a fine line between legal police conduct and a crime.

The inference that must be made to survive the motion to dismiss is reasonable at this stage. It is challenging to train on a policy when they are outdated or do not exist. Police officers routinely must interact with citizens. Policies covering car and body cameras were enacted to protect officers from false allegations, but also to protect citizens from wrongful police conduct – like using their authority to assault. The inference that a more robust training could have avoided this incident is adequate to survive a motion to dismiss here.

While the court agrees that the failure to supervise element was largely pleaded with legal conclusions, it is intrinsically intertwined to the failure to train claim, so it will survive as well.

Miramontes's section 1983 claim against the City of Arcola survives.

4.    *Conclusion.*

María Miramontes's assault, battery, and false imprisonment claims against the City of Arcola will be dismissed.

Her section 1983 claim will subsist.


Signed on March **21**, 2022, at Houston, Texas.


Lynn N. Hughes
United States District Judge