United States District Court
Southern District of Texas

**ENTERED**

March 31, 2026

Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **MARIA MIRAMONTES,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-CV-00927** |
| | § | |
| **THE CITY OF ARCOLA, TEXAS, et al.,** | § | |
| | § | |
| **Defendants.** | § | |

## MEMORANDUM OPINION AND ORDER

Arcola police officer Hector Ruiz served as backup during a traffic stop involving Plaintiff Maria Miramontes, her boyfriend, and their son. Following the arrest of Miramontes's boyfriend for drunk driving, Ruiz drove Miramontes and her son home. During this transport, Ruiz repeatedly placed his hands on her. When they arrived at Miramontes's home, Ruiz locked himself and Miramontes in her son's room and sexually assaulted her. Ruiz turned off his body-worn microphone during the encounter. After another woman came forward and accused Ruiz of similar conduct, Miramontes filed a criminal complaint against him and brought this action under 42 U.S.C. § 1983 against Ruiz and the City of Arcola ("the City").

Pending before the Court is the City of Arcola's Motion for Summary Judgment. (Dkt. No. 85). For the following reasons, the Court **GRANTS** the Motion and **DISMISSES** the case **with prejudice**.

## I.    BACKGROUND[1]

On August 11, 2019, Miramontes was riding in her boyfriend's car with her boyfriend and their child when they were pulled over by a Fort Bend County Deputy Sheriff.  (Dkt. No. 85 at 8–9).  Her boyfriend, who was driving, was eventually arrested for driving while intoxicated.  (*Id.* at 9).  During the stop, Ruiz arrived at the scene to serve as backup.  (*Id.*).

Following the stop, Ruiz gave Miramontes and her son a "courtesy transport" from the scene back to their residence.  (*Id.*).  Miramontes alleges that Ruiz threatened to arrest her for public intoxication and stated that her son would be removed from her care as a result.  (Dkt. No. 86 at 8).  Miramontes reported that she felt claustrophobic in the back seat and began kicking the door, and Ruiz told her to calm down.  (Dkt. No. 85 at 9).  Miramontes further alleges that Ruiz repeatedly stated that she "owed him" for preventing her arrest and began to place his hands on her.  (Dkt. No. 86 at 8).

Once they arrived at Miramontes's house, Ruiz reportedly told her not to bail her boyfriend out "because he was going to be deported anyway" and remained at the house to inform the rest of the family why the boyfriend had been arrested.  (Dkt. No. 85 at 9).  After the rest of the family left the house, Miramontes stated that Ruiz grabbed her hair and told her that she had to pay him back.  (Dkt. No. 86 at 8); (*see also* Dkt. No. 85 at 9).  He then pulled her into her son's bedroom, locked the door, and tried to force her to

---

    [1]    Except where noted, this Section contains only undisputed facts, and all facts and reasonable inferences have been construed in favor of the nonmovant.  *Renfroe v. Parker*, 974 F.3d 594, 599 (5th Cir. 2020).  The Court has not weighed evidence or made credibility findings.  *Id.*

perform oral sex on him. (Dkt. No. 86 at 8); (Dkt. No. 85 at 9–10). When she refused, Ruiz sexually assaulted her and told her not to say anything because no one would believe her over a police officer. (Dkt. No 85 at 10).

Ruiz was equipped with a Watchguard recording system ("Watchguard system"), which included a dash camera on his police vehicle and a body-worn microphone that could be activated either from his vehicle or the microphone itself which he wore on his uniform. (Dkt. No. 85-15 at 8–9). Despite a 2001 General Order promulgated by the City stating that the body-worn microphone must be activated during any citizen encounters, (Dkt. No. 85-14), Ruiz turned off his microphone when interacting with Miramontes. (Dkt. No. 85 at 11).

Miramontes did not immediately report the assault. (*Id.* at 10). Around three months later, she saw a news broadcast in which another woman accused Ruiz of similar misconduct. (*Id.*). This convinced Miramontes to report Ruiz to the Fort Bend County Sheriff's Office and to file a criminal complaint against him. (*Id.*). The Arcola Police Department began a formal administrative investigation of Ruiz for "alleged misconduct including official oppression, immoral conduct, and traffic law enforcement violations." (*Id.*). He was immediately relieved of duty pending the outcome of the investigation and was ultimately fired in January 2020. (*Id.*). The Fort Bend County District Attorney's Office accepted criminal official oppression and sexual assault charges against him. (*Id.* at 10–11).

In March 2021, Miramontes filed this action against the City of Arcola and Ruiz under 42 U.S.C. § 1983 as well as several state law causes of action.  (Dkt. No. 1).[2]  The Honorable Lynn Hughes (then presiding) dismissed Miramontes's state-law claims, (Dkt. No. 50), and Miramontes later moved to voluntarily dismiss Ruiz as a defendant due to his current imprisonment, (Dkt. No. 94).  The City moved for summary judgment as to Miramontes's remaining Section 1983 claims against the City.  (Dkt. No. 85).  Miramontes responded, (Dkt. No. 86), the City replied, (Dkt. No. 87), and Miramontes filed a sur-reply, (Dkt. No. 90).

## II.    LEGAL STANDARD

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it could affect the suit's outcome under governing law.  *Renwick v. PNK Lake Charles, LLC*, 901 F.3d 605, 611 (5th Cir. 2018) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2710, 91 L.Ed.2d 202 (1986)).  And "[a] dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *TIG Ins. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2710).  The moving party "always bears the initial responsibility of informing the district court of the basis for its motion" and identifying the record evidence that "it believes demonstrate[s] the absence of a

---

2    Miramontes amended her complaint twice.  (Dkt. Nos. 7, 19).  The operative complaint, (Dkt. No. 19), alleges the virtually the same causes of action as the original complaint, (Dkt. No. 1).

genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

If the movant meets this burden, the nonmovant must come forward with specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(c); *see also Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The nonmovant must "go beyond the pleadings and by [the nonmovant's] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Nola Spice Designs, LLC v. Haydel Enters.*, 783 F.3d 527, 536 (5th Cir. 2015) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "The nonmovant must 'identify specific evidence in the record and . . . articulate the precise manner in which that evidence supports his or her claim.'" *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). If evidence is merely colorable or not significantly probative, summary judgment is appropriate. *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 378 (5th Cir. 2019) (citing *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2711).

In reviewing a motion for summary judgment, the district court views the evidence in the light most favorable to the nonmovant. *Carr*, 866 F.3d at 601. This means that courts must resolve factual controversies in the nonmovant's favor, "but only

when . . . both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

## III.    DISCUSSION

Miramontes asserts a claim for municipal liability against the City of Arcola under Section 1983.  She alleges that the City's failure to revise its outdated policy on the use of body cameras—as required by Texas law—and its failure to train its officers on this policy resulted in a violation of her constitutional rights.  (*See generally* Dkt. No. 86).[3] Municipalities are "persons" under Section 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978).  But because no municipal liability exists under the doctrine of *respondeat superior*, a plaintiff must show that the municipality's policy or custom caused the constitutional violations.  *World Wide Street Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 752–53 (5th Cir. 2009).  Thus, to state a claim for municipal liability based on the misconduct of an employee, the plaintiff must allege facts showing that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right."  *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quotations and citations omitted).

---

[3]    The Court notes that the City cannot be liable unless a constitutional violation has occurred.  *See Saenz v. Heldenfels Bros., Inc.*, 183 F.3d 389, 392–93 (5th Cir. 1999) (quoting *City of Los Angeles v. Heller*, 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986)).  However, because the City does not dispute that Ruiz's sexual assault of Miramontes violated her constitutional rights, (*see generally* Dkt. No. 85), the Court does not address this issue.

Most of the briefing by both Parties focus on a "failure to train" theory of liability. "A municipality's failure to train its police officers can without question give rise to § 1983 liability." *World Wide Street*, 591 F.3d at 756. However, "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61, 131 S.Ct. 1350, 1359, 179 L.Ed.2d 417 (2011). For liability to attach to a municipality due to an alleged failure to train police officers, a plaintiff must show: "(1) that the municipality's training procedures were inadequate, (2) that the municipality was deliberately indifferent in adopting its training policy, and (3) that the inadequate training policy directly caused the violations in question." *Zarnow v. City of Wichita Falls*, 614 F.3d 161, 170 (5th Cir. 2010) (citing *World Wide Street*, 591 F.3d at 756). The Court finds that Miramontes has established a genuine dispute as to the inadequate training element but not the deliberate indifference element. As such, the City is entitled to summary judgment.

### A.    INADEQUATE TRAINING

A plaintiff must "allege with specificity how a particular training program is defective." *Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005). The City argues that Miramontes has failed to show that its training programs are inadequate. (Dkt. No. 85 at 16–19). It points out that Ruiz satisfied all of the training and certifications requirements required by the State of Texas in addition to an Arcola Police Department field training program that "ensure[d] Ruiz understood how to properly execute law enforcement duties . . . [and follow] Arcola governmental policies." (*Id.* at 17). Additionally, the City argues that its failure to train Ruiz on body-camera use is

inconsequential because it did not issue body cameras during his tenure and the Constitution does not require such policies. (*Id.* at 18–19). Miramontes responds that the City did in fact use body cameras as defined under Texas law during the events in question and failed to provide Ruiz with any training regarding use of that equipment. (Dkt. No. 86 at 16–22). Specifically, Miramontes points to a 2015 Texas law that requires "[a] law enforcement agency that . . . operates a body worn camera program [to] adopt a policy for the use of body worn cameras." (*Id.* at 10–11 (referencing Tex. Code Crim. Proc. art. 2B.0106 (formerly Texas Occ. Code § 1701.655))).

The Court finds that there is a genuine dispute as to whether Ruiz was adequately trained. To begin, it is clear that the City had an outdated body-camera policy. The only regulation effective at the time Ruiz assaulted Miramontes is an Arcola Police Department General Order effective November 1, 2001. (Dkt. No. 85-14). That policy governed officers' use of the Watchguard system and stated:

> All members of the department who operate a patrol car equipped with an on-board video camera are required to utilize the same at all times they have contact with citizens. This applies to calls for police service, traffic stops, citizen contacts, back ups of other officers/agencies, etc. Furthermore, if there is a remote microphone for that camera, all members are required to wear the same on their uniform while on duty and ensure that the microphone is activated every time the video camera is recording.

(*Id.* at 2–3). While the General Order establishes procedures for use of the equipment

8

Ruiz possessed during the assault,[4] it does not meet the requirements of Texas Code of Criminal Procedure Article 2B.0106.[5]  For example, the General Order does not include several provisions required by the Article such as "guidelines for public access, through open records requests, to recordings that are public information" and "provisions entitling an officer to access any recording of an incident involving the officer before . . . mak[ing] a statement about the incident."    Tex. Code Crim. Proc. art. 2B.0106(b)(3), (4).[6]  Regardless, even if the General Order complied with the 2015 law, Miramontes has presented summary-judgment evidence creating a dispute as to whether Ruiz was actually trained on the use of the Watchguard system under the Order.  Ruiz's TCOLE Personal Status Report—which lists the training that an officer receives— indicates that he did not receive any Watchguard-specific or general body-worn camera

---

[4]    To the extent Miramontes argues for *Monell* liability apart from her failure to train theory, that argument fails for this reason.  While the City may have been in violation of certain provisions of Article 2B.0106, it did not violate the law by failing to have a policy detailing when an officer should activate a body worn camera or microphone.  The 2001 General Order explicitly states that officers must activate their body-worn microphones when they have contact with citizens. (Dkt. No. 85-14).  As such, the City's "policy" of failing to update the General Order was not the moving force behind Ruiz's sexual assault of Miramontes.

[5]    The City's argument that the Watchguard microphone worn by Ruiz does not qualify as a "body worn camera" under Article 2B.0106 is unavailing in light of *King v. Paxton*, 576 S.W.3d 881, 893–96 (Tex. App.—Austin 2019, pet. denied) (holding that the term "body worn camera" in the previously codified version of Article 2B.0106 includes devices that record only audio).  The Court is also unpersuaded that Article 2B.0106 is inapplicable because it requires a body worn camera to be activated only for a "law enforcement purpose."  (*See* Dkt. No. 87 at 8–10).  It strains credulity to argue, as the City does, (*id.* at 8–9), that Ruiz was not engaged in a law enforcement purpose when he was providing Miramontes with a "courtesy transport" following her boyfriend's arrest.  That he sexually assaulted Miramontes while completing this task does not change its character.

[6]    The Court notes that Article 2B.0106 does not state that law enforcement agencies must train their officers on body-worn camera operation, just that they must have a policy. *See generally* Tex. Code Crim. Proc. art. 2B.0106.

9

training during his employment.  (Dkt. No. 86-14).  Arcola Police Chief Michael Ellison also testified in his deposition that several Arcola police officers did not receive training until after Ruiz was terminated following the assault.  (Dkt. No. 86-12 at 32–35).  A reasonable jury could find that the complete absence of training in the use of standard-issue equipment such as the Watchguard system constituted inadequate training.  *See Roberts,* 397 F.3d at 293 (quoting *Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) ("[T]he focus [in a failure to train claim] must be on the adequacy of the training program in relation to the tasks the particular officers must perform.").

### B.     DELIBERATE INDIFFERENCE

Under the second failure-to-train element, "a plaintiff must plausibly allege that the municipality was deliberately indifferent to the need for proper training."  *Anokwuru v. City of Houston*, 990 F.3d 956, 965–66 (5th Cir. 2021).  To show deliberate indifference, the plaintiff must demonstrate "that in light of the duties assigned to specific officers or employees, need for more or different training is obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need."  *World Wide Street*, 591 F.3d at 756 (quotations omitted).  "'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 1391, 137 L.Ed.2d 626 (1997).  As such, "[c]laims of inadequate training generally require that the plaintiff demonstrate a pattern of conduct."  *Sanders-Burns v. City of Plano*, 594 F.3d 366, 382 (5th Cir. 2010).  Without a pattern of similar incidents, a plaintiff

generally fails to demonstrate deliberate indifference.  *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–83 (5th Cir. 2005).

The City argues that its policymaker[7] was not deliberately indifferent because there was no pattern of similar constitutional violations and because there was no reason to believe that Ruiz would break the law and sexually assault someone while on duty. (Dkt. No. 85 at 19–20); (Dkt. No. 87 at 11–12).  Miramontes disputes this and argues that there was a pattern of misuse of the Watchguard system.  (Dkt. No. 86 at 22–23).  She points to a July 19, 2019, email in which Chief Ellison instructed Arcola police officers on the proper use of Watchguard dashcams in response to concerns that officers failed to correctly position the cameras during traffic stops.  (Dkt. No 86-15).

Miramontes's argument fails to establish a pattern of similar conduct.  She does not provide evidence of any other instance in which Ruiz or another Arcola police officer failed to turn on their Watchguard microphone during an interaction with a citizen, much less that they used such an opportunity to sexually assault someone.  Chief Ellison's email also does not support the notion that such a pattern existed.  If anything, it is evidence that officers routinely failed to properly use their dashcams, not their microphones.  Even if the email was evidence of a pattern, it can hardly be said that the City was deliberately indifferent to inadequate training considering the purpose of the email was to inform officers of the proper protocol.

---

[7]    Miramontes and the City dispute whether the Arcola City Council or Chief Ellison was the relevant policymaker for *Monell* liability.  (Dkt. No. 85 at 13–15); (Dkt. No. 87 at 7–8); (Dkt. No. 86 at 14–15).  The Court need not resolve this dispute as Miramontes has failed to establish deliberate indifference regardless of the policymaker's identity.

11

Nevertheless, the Supreme Court has "left open the possibility that, 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Connick*, 563 U.S. at 63, 131 S.Ct. at 1361 (citing *Brown*, 520 U.S. at 409, 117 S.Ct. at 1391). "[D]eliberate indifference can [] be inferred if the factfinder determines that the risk of constitutional violations was or should have been an 'obvious' or 'highly predictable consequence' of the alleged training inadequacy." *Littell v. Hou. Indep. Sch. Dist.*, 894 F.3d 616, 624 (5th Cir. 2018) (quoting *Brown*, 520 U.S. at 409, 117 S.Ct. at 1391.). This exception allows a plaintiff to establish deliberate indifference by "showing a single incident with proof of the possibility of recurring situations that present an obvious potential for violation of constitutional rights, such that it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence" of the failure to train. *Id.* (quoting *Drake v. City of Haltom*, 106 F.App'x 897, 900 (5th Cir. 2004)) (cleaned up).[8] Moreover,

> Because 'virtually every' plaintiff alleging municipal liability can propose *some* training reform that would have prevented "the particular injury-causing conduct," [Fifth Circuit] caselaw has "generally reserved" the single-incident method of proving deliberate indifference for cases in which the policymaker provides "no training whatsoever" with respect to the relevant constitutional duty, as opposed to training that

---

[8]   The Supreme Court "posed the hypothetical example of a city that arms its police force with firearms and deploys the armed officers into the public to capture fleeing felons without training the officers in the constitutional limitation on the use of deadly force." *Connick*, 563 U.S. at 63, 131 S.Ct. at 1361. Since police frequently attempt to arrest fleeing felons and the likelihood that an officer lacking specific tools to handle such a situation will violate constitutional rights, the Supreme Court theorized that a city's decision not to train the officers about the constitutional limits of the use of deadly force could reflect the city's deliberate indifference to such a highly predictable consequence. *Id.* at 63–64.

> is inadequate only as to the particular conduct that gave rise
> to the plaintiff's injury.

*Id.* at n.5 (first quoting *Canton*, 489 U.S. at 391–92, 109 S.Ct. at 1206; and then quoting *Peña*, 879 F.3d at 624).

Here, Miramontes has failed to carry her burden of presenting a genuine dispute as to the single-incident method of proving deliberate indifference. The summary-judgment record contains evidence that Ruiz received some training on the relevant constitutional duty: abiding by Fourth Amendment requirements when interacting with citizens. (*See* Dkt. No. 85-14 at 2–3); (Dkt. No. 85-1 at 10). Ruiz's Personal Status Report form indicates that he received "Civilian Interaction Training" in March 2019. (Dkt. No. 85-10 at 3). The City has also provided expert testimony stating that the Arcola Police Department requires its officers to undergo a field training program in which they are provided instruction and on-the-job training to ensure officers "understand how to properly execute law enforcement duties." (Dkt. No. 85-1 at 10). While little information is provided regarding what these trainings entail and whether they adequately cover an officer's responsibilities under the Fourth Amendment, enough evidence has been presented to find that the single-incident exception is inapplicable in this case. *See Littell*, 894 F.3d at n.5. Miramontes has failed to show that Ruiz received no training whatsoever regarding the relevant constitutional duty. She has thus failed to present a genuine dispute as to the deliberate-indifference element.[9]

---

[9]    Even if Miramontes could demonstrate deliberate indifference on the part of the City, she cannot establish the necessary causal connection between the City's failure to train on the use

(continue)

13

Ruiz abused the power and trust of his office when he sexually assaulted Miramontes, a woman he purported to be assisting. The Court is sympathetic to Miramontes and the life-long effects Ruiz's conduct had and will continue to have on her. Nevertheless, the law does not support imposing Section 1983 liability on the City for Ruiz's actions. As a result, there is no genuine dispute as to Miramontes's failure to train claim and it must therefore be dismissed.[10]

## IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** the City of Arcola's Motion for Summary Judgment. (Dkt. No. 85). Miramontes's Section 1983 claims against the City are therefore **DISMISSED with prejudice**.

It is SO ORDERED.

Signed on March 31, 2026.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

---

of the Watchguard system and Ruiz's sexual assault. Another court in this district recently granted summary judgment for the City in a similar action filed by the other women Ruiz sexually assaulted. *See Lillie v. Ruiz*, No. 4:21-CV-03740, 2026 WL 734068 (S.D. Tex. Mar. 16, 2026); (*see also* Dkt. No. 110). Like the plaintiff in that case, Miramontes has not presented summary-judgment evidence establishing that the City's failure to train was "affirmatively linked" to Ruiz's assault or that it is more than a but-for cause. *Lillie*, 2026 WL 734068, at *3 (quoting *Fraire v. City of Arlington*, 957 F.2d 1268, 1282 (5th Cir. 1992)).

10    To the extent Miramontes brings a failure to supervise claim under Section 1983, her Responses make no attempt to support it with summary-judgment evidence. (*See generally* Dkt. Nos. 86, 90). As such, no genuine dispute exists, and summary judgment is appropriate as to that claim as well.